May I just go on record and say I've never laid eyes on Don Jordan before in my life. No relation. I didn't even think about that. Case number 13-5882, Occupy Nashville, et al. v. William Haslam, et al. Argument not to exceed 15 minutes per side. Ms. Jordan, you may proceed for the appellate. And before we begin, may I reserve three minutes for rebuttal, please? You may. Good morning. My name is Dawn Jordan. Heather Ross and I represent the defendants in this case. The reason we are here is because the district court improperly relied on an alleged failure to follow state law, the Tennessee Uniform Administrative Procedures Act, to support her findings that defendants violated the First, Fourth, and Fourteenth Amendments. These findings and holdings are improper. There are four main points to support our argument that the district court should be reversed. First, the UAPA is irrelevant in this federal case. The mere violation of a state statute does not infringe the federal constitution. Two, there was no First Amendment violation. Occupancy 24-7 is not a clearly established First Amendment right, and the use policy's ban on overnight occupancy, which was the only part of the use policy that was enforced, was a reasonable time, place, and manner restriction. Three, there was no Fourth Amendment violation because the undisputed facts showed an intent to occupy 24-7, and in violation of the ban on overnight occupancy, thus there was no consent to be on the property and plaintiffs were guilty of state law trespass. And four, there was no due process violation because plaintiffs were not deprived of a liberty interest. Can I ask you, you start out by saying, in essence, that it was error for the district court to rely on state law to say there was a constitutional violation. Your opponents, of course, say that the, in essence, I take it they'll speak for themselves, that the district court didn't rely on state law to say there was a constitutional violation, but that that was a necessary preliminary step in order to know what was the governing rule or policy for use of the plaza, so it's not a decision that state law drives constitutional analysis, but that you have to know what law's in place, and that requires that as a first step. What's wrong with their assertion that you need to take a first step to know what law you're looking at for constitutional law purposes? Because the state law, whether the state or the defendants followed state law, is irrelevant to these proceedings. In Boswell v. Meyer, this circuit, the Sixth Circuit, found that a prison mail policy did not violate the First Amendment and held that an alleged failure to properly promulgate pursuant to these state procedures, such as the UAPA, was irrelevant and did not state a claim under Section 1983. Boswell didn't cite any authority for that proposition at all. Do you have a basis for that other than the statement in Boswell itself? Yes, there is Walker v. Menses. This court further stated that a federal court should not rule on the validity of a state regulation challenged on the sole ground that it was not properly adopted under state law. And also in Davis v. Shearer, the Supreme Court found that a violation of a state statute, even a clear state statute, does not deprive an official of qualified immunity unless the state statute is the basis for the damages claim. And here the UAPA is not the basis of the damages claim, but it's more like what they're protecting. How should the district court have decided what was the governing policy for the use of the plaza if not by looking to state law in the first instance? Or was it unnecessary to ask what the governing rule for the plaza was? The issue is whether the bail and overnight occupancy within the use policy was a proper time, place, and manner restriction under the First Amendment. That is the inquiry that should have been made. And the district court did not go to that extent. So your position is that it doesn't matter if the governor had walked out of his office and said everybody off the plaza between the hours of 10 and 6, your position would be don't worry about how he got there, don't worry about whether it just struck him over coffee that morning. It's okay because when you look at it, that is his declaration, that would be an appropriate time, place, and manner restriction. Is that the argument? I don't know that that particular scenario would be a proper time, place, and manner restriction. I've tried to posit it exactly as you have. 10 to 6, off the plaza. But it doesn't come through any meeting. It doesn't come through any discussion. It's just the governor walking out of his office after coffee and saying this is it, get off, 10 to 6. Your position is it doesn't matter how you get there. It only matters that the policy itself is appropriate. Have I understood you right? That is correct, Your Honor, but I want to make one clarification, and that is it's the bail and overnight occupancy, not necessarily the curfew because the use policy says in no event shall overnight occupancy be permitted by any group or individual. And that is the basis for saying that was a reasonable time, place, and manner restriction. So for purposes of this argument, you take the one sentence and ignore the rest of the new policy, right? That is correct, Your Honor, and if the defendants can be charged with knowing about unconstitutional provisions such as prior restraints and such, then they can also be charged with knowing that constitutional provisions can be severed from an otherwise unconstitutional policy. That proposition really wasn't in your brief. What authority do you have in this severability idea? There are several cases that we cited in the brief, and I do not know them off the top of my head, and I'm sorry about that. I'm sorry. That severability idea didn't come through. I understand that's the basis of your argument. Yes. But, boy, that didn't shine to me from your brief. Thank you. Proceed. Okay. Thank you. The issues in this case, Your Honor, Judge Jordan, are whether defendants violated clearly established federal rights, the First Amendment right to free speech, the Fourth Amendment right to be free from unreasonable searches and seizures, and the 14th procedural due process. As to the First Amendment, as we state in the brief, occupancy 24-7 is not a clearly established First Amendment right. And Clark, the Can I ask you about your assertion about camping? Yes. Because as I read the back and forth between the parties, I was, until I got to your reply brief, I was under the impression that the camping aspect of that was important. And what you said just a moment or two ago seems to imply that again. When you said it's not the curfew, it's the overnight occupancy. And maybe, you know, I'm being simplistic, but when you say overnight occupancy, that means camping to me. So I was curious when I saw on pages three and four of your reply brief that you say, quote, the defendants have not contended that the plaintiffs were arrested for camping. Correct. The plaintiffs were arrested for trespassing. Correct. With full notice of the use policy's overnight restrictions. Is there a difference in your mind between overnight restrictions and camping? And is the case not about the concern that overnight occupancy would cause, that is camping? This is a case, it's overnight occupancy, whether it be camping or just staying overnight for however. And the problem that was happening was, and even according to their own counsel, who wrote to the Department of General Services on October 25, they have had some bad problems with being attacked by the homeless or gangs in the middle of the night. And on October 26, the day before the use policy was implemented, representatives of Occupy Nashville came to the Department of General Services and Department of Safety and complained about those things. I believe we're all familiar with the facts. My curiosity is why are you distancing yourself from the camping piece there in the reply brief? Is there a reason why you seem to be stiff-arming it? Because, of course, your opponents say it's never been about camping and they can't fit that square peg in a round hole, and you seem to give a little on that, and I'm wondering about that. The plaintiffs were arrested for trespass. We don't want to say they were arrested for camping because there is no statute. There was no statute where they could be arrested for camping as such. Yeah, but the piece was motivated. Was it not, in fact, the position of the appellants that the decision to put the new rules or policy, whatever you want to call it, in place, was driven by concerns about the overnight occupancy, the camping that was going on? The overnight occupancy and the camping, yes. That is one of the driving forces, yes. Counselor, were the same people arrested in two nights? Some of them were overlapping. How many of them? There were 55 arrested one night, do you say that, or the other side? No, there were approximately 20-something the rest of the first night, 20-something the second night. I must add them together. Some of them were. Some of them were overlapping, but not everybody. Some were arrested twice, and some were arrested just one time. Okay, and this judicial magistrate refuses to approve the arrests the first night. Yes. Are the second-night arrests different than the first night? They are in terms of what the magistrate said. The first night, the magistrate said that there was not sufficient notice. Now, Commissioner Gibbons from the Department of Safety testified that, and his understanding was that there was no evidence given to the commissioner, night commissioner, for anything, including notice. And then the second night was the night that the commissioner said, I don't think that the policy is constitutional, and then after that there were no further arrests. The commissioner's findings are in the record somewhere? Yes, they are. Is the existence of the earlier policy meaningful at all? You seem to imply that it's not meaningful. Is the existence of that old policy, the old rules, the district court calls it, a pertinent legal fact? It really isn't, Your Honor. It was just a policy for use on the plaza. It didn't provide any further rights, or any less rights, of course, than the First Amendment, and it was silent on the whole overnight occupancy or occupancy 24-7. Well, does the fact that it was silent mean that there was, as your opponents say, no ban, that it was permitted? I think the fact that it was silent, it didn't say one way or the other. That allows it under the First Amendment, doesn't it? I'm sorry, what? That surely allows it under the First Amendment, you know, the old German-English, German-American type distinctions about prohibited and allowed. I think in the United States, if it's not prohibited, it's allowed, right? Well, in Clark, as we said, the Supreme Court held that occupancy 24-7 is not a First Amendment right, and they said that it seriously doubted that. They actually held that it's not. I'm sorry, let me say what. They're saying that they've not held that it is, from saying that they've held that it's not. I apologize for that. You're absolutely correct, Your Honor. What they held was that they seriously doubted that the First Amendment required the Park Service to allow 24-hour vigils at all. So it's not clearly established. I mean, by definition, that's not a holding. They expressed in dicta on the side, you know, we got our doubts, but that wasn't the holding of the case, right? It was not the holding of the case, but it left room for doubt. So it's not a clearly established First Amendment right. So is camping speech? The Supreme Court said that they assume without deciding again, leaving it open for doubt, that sleeping or camping is expressive conduct that is protected by the First Amendment. You think expressive conduct means speech? I know they use the word expressive conduct. Does that mean speech? It is speech that is protected to a certain extent. I believe is the way that it is. And the Supreme Court also stated that the Park Service's goals of park protection would probably be better served if tents and 24-hour vigils were banned altogether. And the bail and overnight occupancy was a reasonable time, place, and manner restriction. It was content neutral and applied to everybody without regard to speech. It promoted a significant government interest. The district court on page 43 of her opinion acknowledged that the uncontroverted evidence establishes that the use policy was intended to alleviate the negative secondary effects of plaintiff's overnight use of the plaza, damage to the plaza, and violent crime. Your red light is on. Let me see if our judges have questions. Judge Sintel, Judge Jordan? Okay. That does conclude your opening argument. You have reserved time for rebuttal. We'll see you then. May I finish the one sentence? Yeah, you may. You had a long sentence before that, but go ahead. You can finish this sentence. Thank you. Go ahead. Oh, no, no big deal. Go ahead. We'll give you a long sentence, too. Okay. Go ahead. In the district court's own words, the situation on the plaza had reached a breaking point. Something needed to be done. Thank you. Thank you. Good morning. My name is David Briley, and I'm here with my co-counsel Tricia Hertzfeld and Patrick Froh on behalf of Seven Nashvilleians and Occupy Nashville. And I'd like to start today, may it please the court, by reading a brief passage from a D.C. Circuit case that came out just months before these events. That's not binding on us out here. I understand, but it does include some important Supreme Court language, which I believe it is. And it quotes from Watchtower Bible, which says, It is offensive not only to the values protected by the First Amendment, but to the very notion of a free society, that in the context of everyday public discourse, a citizen must first inform the government of her desire to speak to her neighbors and then obtain a permit to do so. Why are we talking about the permit? I thought that this case was decided on the basis of the curfew and that that was the only thing that was in front of us. Why is the permit something that we should even be thinking about? Because the permitting scheme that was promulgated by a single person in the Department of General Services was clearly unconstitutional, under settled law. Assume that's true. Assume it's true. How is it in front of us? The judge that you won in front of said the injunctive and declaratory judgment relief pieces of this are off the table. We're talking about one thing and one thing only. We're talking about money damages against two people, and we're talking about them on the basis of 1983 violations associated with arrests stemming from violations of the curfew provision. Have I misunderstood the district court's ruling? Well, I do think that the district court ultimately reached the analysis of Even if it reached the analysis, if the analysis was meaningless to the court's holding, which I tried to describe to you just now, isn't the only thing in front of us the curfew aspects of this regulation and the asserted constitutional violations which came as a result of the imposition of the curfew? Isn't that, in fact, what's in front of us? Well, I don't think it precisely is because I think the qualified immunity defense that has been asserted by the defendants requires the analysis under certain circumstances. How? They've expressly disclaimed it. They themselves in their brief have said there's no issue with respect to the permitting. In fact, they question your standing to even raise the permitting piece because there's no ruling of the district court in front of us on that. And since they're not enforcing it, you don't have any prospective harm you can invoke. So I really am curious why your opener is the permitting part of that scheme. Well, and I think that's, well, perhaps it was not the right opener. But I do think that it is ultimately what the defense that's being asserted by these defendants amounts to is that they are trying to assert that they have created a regulatory scheme that complies with the well-settled, clearly settled law that governs First Amendment conduct. Are they saying it complies with clearly settled law, or are they saying the law is not clearly settled and therefore they have the qualified immunity? They are saying the latter. They are saying the latter. They are saying that it was not. Now, they say that, but they say that in the context of prohibiting camping, which is not at issue in this case. That's how they get to that issue. That is a hair that's split pretty fine as to whether camping is at issue. I realize occupancy overnight does not necessarily constitute camping, but a zoom diagram would seem to overlap. Well, it may under certain circumstances, but not here. These individuals were sitting down in the middle of the plaza, a plaza that is located between the three branches of government, the most quintessential public forum in our state. Mr. Briley, are you honestly saying that the occupiers weren't camping on the plaza? They've been camping on the plaza for three weeks. The record is not clear that these individuals who were arrested were camping. Counsel, there's all kinds of stuff about food and electricity, and you know what's in the record found by the judge here. She makes finding after finding after finding. That's camping stuff, huh? Sure. But it's not clear that these individuals were the ones who were camping. That's not in the record. Well, is it clear in the record that the concern that prompted your clients to go through Mr. Hunt to the state officials and complain and say, at the state's expense, you should bring in security and sanitation services, is it not clear that that was prompted by camping? You had people staying overnight. You had people doing what people do overnight, which is have waste elimination problems, and you had some crime associated with people staying there overnight. It, in fact, is not in the record that it was. There is evidence that it occurred while they were there. However, for the years prior, the same thing had been taking place on the same location. The city of Nashville had actually asked the state to impose a curfew because of that same conduct, and they elected not to. No, it is not clear. There been a previous Occupy movement in Nashville? No, but there had been homeless people who had been causing these same issues on the same location prior to this, and the state had elected not to do anything. Isn't it a fair inference from the record that this was a first-time experience for the state? Nobody had ever moved on to the plaza in Moss and stayed for three weeks taking over electricity, using bushes as toilets. Having this large a group spending the night. Sure. There is evidence that that would be accurate. It would be unfair for me to say otherwise. However, some elements, the elements of the assaults and the public urination and the indecency, that is not true. Those were there before, and those were on the scale significant enough. Scale matters, right? Because your own clients came in and said, this is getting out of control, in effect. Right. Scale does matter, and the scale was significant enough in the past for the city to make a request, specifically for a curfew here, and for the state to decline to do so. Now, it is important to note that when pressed about the duration of this ban on occupancy, that it was only intended to last until our clients were evicted from the location. That is unclear, right? The attorney says temporary, and the state officers act like it was going to be permanent. They are pretty muddled on that, aren't they? There is some muddle, but the person who spoke most definitively about the ban, who drafted it, who was responsible for interpreting it. Not a defendant here. We are talking about the defendant's personal liabilities. Talk about these defendants' personal involvement in this and personal knowledge. I understand, but he is acting on the direction of one of the defendants in this matter. This attorney is acting at his direction. That defendant seemed to think this was a permanent change in policy instituted, in fact, to deal with the problems that your own clients came to complain about. Right. That uncertainty is why this regulation, this ban, is so problematic. Is it the ban itself that is problematic, then, as opposed to the way it was adopted? They are both problematic. They are both problematic. The way it is adopted is problematic because... Under state law. The problem there is a matter of state law, right? No, it is not. It is not in the context that they asserted. Before you ever get to the qualified immunity analysis, you have to determine whether or not a reasonable state actor would have believed that this action, the ban, was within their capacity. Just like the example you used of the governor coming out and saying, I am banning presence on this... Counsel, why don't the various statutes that give these officials the control of state grounds, the power to keep them safe, you know all the statutes they have cited. Why isn't that enough? Because that is not the only statute that exists under state law. Can you point us to anywhere in the district court's opinion where the district court judge said that the defendants acted ultra vires? No, the court did not actually reach that conclusion in her opinion. However, I think that is essentially what the decision is. When the court is determining that the new rules never took effect, that is an act of ultra vires. Really? Is it the same thing to say you made a mistake in how you promulgated these rules to say you've got no power to promulgate rules at all? That's not the difference. The difference is not between making a mistake and having no power. The district court here said you blew it under the Uniform Administrative Procedures Act and never said you don't have the power to act under the Uniform Administrative Procedures Act. There was power to act under the UAPA. That is correct. They didn't follow what the UAPA called for. I mean, would your position be different if they'd given notice and an opportunity to be heard but they'd given two days less of a notice period than required under the UAPA? Well, under the UAPA... You didn't obey the UAPA. You're beyond all capacity to act. The UAPA actually only requires a 24-hour notice. Suppose it were 22 hours, counsel. Suppose it were 22 hours. Go ahead. Proceed. That's the question. Would that be enough to say that it's ultra virus? No. Probably not. But under circumstances where you ignore it entirely, where you say I'm going to act as if it does not exist, and I have the... Well, is that an assumption that you're making? I mean, this was a summary judgment record, and we're bound and obligated to view things in the light most favorable to the defendants. Is it fair to say that it's clear on this record that they said let's ignore the UAPA, or is it fair to assume and to believe based on the record that they gathered and met to deal with an emergency situation and thought they were complying with state law? Well, I think that because of the court's decision, ultimately, although it does not use the words ultra virus, I think that the court ultimately did inherently implicitly find that this was an act outside the authority of these officials. Now, for this court... It seems like a giant leap to me, Mr. Briley, to say you blew it on the UAPA, therefore you had no authority to act at all. It was wrong for you to act at all. Well, because they had other authority to act, they could have enforced the laws of the neutral criminal laws on this side. They had authority to act. We're not suggesting that they had no authority to act. That may bring me back to what I asked a while ago about whether the problem here is the regulation itself or the way it was adopted. Insofar as what the defendants actually did by way of regulation, if they had done it with the proper procedures, what would be wrong with it? Well, the piece of paper that they adopted, the one-page regulation that they adopted, is improper. It leads to the second page. Go ahead. It is improper. It is improper for many reasons. First, it is vague. I asked you how so. It's vague and ambiguous. And for example, it's vague and ambiguous because we don't know what occupancy means. We don't know what a gathering means. For example, a gathering might mean somebody in a Hillary Clinton shirt and somebody in a Rand Paul shirt debating which one is better. A gathering is not in the sentence or two we're concerned with. We're concerned only with the notwithstanding paragraph. I think we're concerned with the entire regulation. Now wait, now wait. I thought we conquered that earlier. I thought we're only, but you tell me how I'm wrong, I thought we were only concerned about the notwithstanding paragraph. We are concerned with the entire regulation. Yeah, but it says the word notwithstanding, which in law generally means you ignore the rest of it and look at that. It says notwithstanding all that that's really bad. But on its face. Facially, this regulation, from the first word to the last, is so patently violated. Well, talk about the notwithstanding paragraph. The notwithstanding paragraph. Yeah, yeah, yeah. That's what I need you to focus on. The curfew. Well, it has a, yes, it has a curfew, and then it has an overnight occupancy. Right. It has two sentences with two concepts. Right. And cites a Tennessee statute in the next sentence. Those are violative of the First Amendment because it doesn't define what occupancy is. So it means that presence is prohibited. Well, that's what trespass laws do, counsel, right? Yes. Trespass laws get occupancy or mere presence or being at the wrong place at the wrong time. This is a plaza that is between two streets. It faces the War Memorial Plaza. It has a statute. It has multiple statutes on it. So my presence there to see the statute at a certain hour violates that rule. Okay. That is broader. No, it does. We're asking you what's wrong. That is broader. Why is it wrong to have a statute regulation, a piece of paper, as you say, that says this is only open during certain hours? Because it is broader than is necessary to protect the state's legitimate interest in protecting that physical location. Is that so clear that it defeats qualified immunity that you have a right to be there 24 hours a day? Yes, it is. As opposed to a right to be there sometimes. Yes, it is. And even in the Bordley case. Why? Why? Tell us why. Why is it too broad? And more specifically, as you're answering that, you should focus on the difference between least restrictive alternative, which this is not required to meet, and narrowly tailored, which it is. Right. This is not narrowly tailored because you can do other things to protect this space in a way that protects the legitimate interest of the state. That's a least restrictive alternative analysis. That is not a narrowly tailoring analysis. To say you could do this other ways doesn't speak to the narrowly tailored test, does it, which says a requirement of narrow tailoring is satisfied so long as the regulation promotes a substantial government interest. Right. So whether you think it's broader than you'd like or not, it's unquestionable, isn't it, a substantial government interest that would be achieved less effectively absent the regulation? Right. Yes. However. Well, then doesn't that end it? No, it doesn't. It does not. You can't turn narrowly tailored into least restrictive. It does not end it because even under circumstances such as this, when you impose a curfew like this, there has to be an escape. There has to be some way to assess the bureaucrat's administration of that ban to determine whether or not it is objective in their use. And the reason is that if you do not have that, that the bureaucrat can use the curfew as a guise to limit the content of speech. Now you're getting into the permitting, aren't you? Now you're back, despite all our efforts to keep you on paragraph 4, the notwithstanding paragraph, back to prior restraints on speech, which, well, we sort of come full circle, it looks like. Let me see if there are other questions. Are there questions yet? I realize the red light's on. No, we're done. I don't know. It's up to you. This is rather unspecific, but I got the sense from your brief that you were arguing that the reasonableness of the conduct of the defendants is not an issue for the court. Is that misreading your brief, or is that? Well, I think that's an open question that the Supreme Court has left out there for the circuits to decide. Does Rickard answer that? I'm sorry? Does Rickard v. Plumhoff or Plumhoff v. Rickard, whichever one it is, does that answer that question? I can't answer that question, Your Honor. I think it still knows. You got that opinion. I mean, it was filed with the Israel 28J authority by your opposing counsel. I don't think it does, Your Honor. The language of it seems to. I'm sorry? The language of it seems to. Seems to. Well, doesn't that case also speak to the level of generality at which the clarity has to be established with respect to the clarity of the constitutional right being violated? I do think it does in the context of a police incident. I understand that the facts are different. The facts are always different. What is the simply stated clearly violated right or clear violation of constitutional right in one sentence that you are relying upon? Our clients have the right to participate in political protests on the legislative plaza during the time period where it was banned. Twenty-four hours a day. During the time period where it was banned. That's right. Okay. Thank you. Judge George, any further questions? Oh, no, no, no. That's what this is about. No questions? Okay. Thank you for your argument. You've reserved time for rebuttal. Yes, thank you. Proceed. Okay. I want to respond to an argument that opposing counsel made with respect to these particular plaintiffs who are just sitting on the plaza. That is not accurate. At the time of the arrests, the plaintiffs were occupying the plaza at 3 o'clock in the morning in defiance of an order to disperse. About 30 people had left with their property. They were not arrested. And after the order, plaintiffs continued to occupy with camping tents and camping gear surrounding them that had been present night and day for weeks. And at that point in time, there was no way to distinguish between occupying Nashville, between homeless, between gangs, between any of the groups that were on the plaza. The troopers were able to rely on or to say that they were all acting as a group. Several of the plaintiffs even testified that they were sleeping in their tents at the time the order of dispersal came. And plaintiffs, through their representative trip hunt, they were told through trip hunt that there would be a curfew placed and would they voluntarily leave. Trip hunt took that to them. They voted on that and came back with a resounding no. They would not voluntarily leave the plaza at night. And so the plaintiffs were occupying in violation of the ban on overnight occupancy and they were occupying with the intent to occupy 24-7. Can you tell me if there's a reason why your clients chose not to follow the emergency procedures available to them under the UAPA? I mean, why didn't they just do that? Or even try to. Or even try to. Yeah. And the best that we can determine is that they were faced with truly an emergency situation. Yes. And they were wanting to, I understand. UAPA's got an emergency provision, right? I'm sorry? It's got an emergency provision for emergencies. It does. It does. It does. But I would point out that even under the emergency procedures, those policies would have gone into effect immediately without an opportunity for notice to be heard. At all. They just would have gone into effect. It's 24 hours, right, counsel? I'm sorry? It's 24 hours. 24 hours. Proceed. 24 hours. Okay. Not overnight, but 24 hours. But that is correct. But there would have been no notice and opportunity to be heard. I want to point out that the statutes that pertain to the duties of the defendants on the plaza are not a part of the UAPA. Plaintiffs have claimed that to be the case. That is not the case. With respect to this, that the rules of the policy would be in place until Occupy Nashville was evicted. As Judge Jordan pointed out, that was not what the defendants had understood. That's what their lawyer said. Well, that's not what their lawyer said either. Their lawyer said that- It could be interpreted that way. Okay. They were there temporary, but he said until they could get control of their movement again was his expressed testimony. Your Honor, finally, with respect to due process, I don't have enough time, but we're asking for you to exercise pen and appellate jurisdiction and reverse the grant of summary judgment to plaintiffs and grant summary judgment to defendants. Let me see if there are questions. Thank you, yes. Questions, Judge Jordan? Okay. Thank you for the very good argument this morning. The case is submitted. Thank you, Your Honor. Thank you for coming on the circuit.